## McKELVEY v. TUCKER et al.

### (Circuit Court, N. D. New York. May 18, 1893.)

### No. 3,019.

ACTION ON GUARANTY—AUTHORITY OF AGENT—EVIDENCE.

T. & Co., desiring to attach the property of their debtor, J., in another state, telegraphed to a bank there: "Please provide bondsmen, T. & Co. v. J. See N.," (T. & Co.'s attorney,)—and afterwards, "We guaranty you against loss on bond of $2,000, T. & Co. v. J." T. & Co.'s attorney having levied an attachment on the debtor's goods, M., president of the bank, at the request of the attorney, and relying on T. & Co.'s guaranty, executed an indemnity bond required by the sheriff, the goods being claimed by a chattel mortgagee. *Held,* in an action on such guaranty by M., that it was no defense that defendants had not authorized their attorney to procure the execution of any other than the attachment bond.

At Law. Action by John McKelvey against Henry Tucker, Sarah Griffith, and others to recover damages sustained by the plaintiff by reason of his having signed indemnity bonds for the defendants, they being under an implied obligation to indemnify the plaintiff against loss. The complaint alleges that the sum thus lost by the plaintiff amounts to $4,733, and interest from February 10, 1892. The case was tried to the court, jury being waived by written stipulation. Judgment for plaintiff.

Statement by COXE, District Judge:

In the autumn of 1883 the principal defendants were doing business at Utica, N. Y., under the firm name of Tucker, Calder & Co. At this time the firm of J. K. Johnson & Co. were doing business at Grand Forks, Dakota territory, now North Dakota. They were indebted to Tucker, Calder & Co. in about the sum of $1,430, for goods sold and delivered. Tucker, Calder & Co. placed their account in the hands of R. G. Dun & Co. for collection and they sent it to Noyes & Noyes, attorneys at Grand Forks. On the 20th of November, 1883, Noyes & Noyes telegraphed R. G. Dun & Co. as follows:

"Tell Tucker to instruct their (bank) to wire bondsmen to First National Bank, Grand Forks, we will attach Johnson.  Noyes & Noyes."

The plaintiff, John McKelvey, was the president of the First National Bank of Grand Forks. On the same day Charles S. Symonds, who was cashier of Tucker, Calder & Co.'s bank, telegraphed the First National Bank of Grand Forks as follows:

"Charles P. Clarke will be bondsman for Tucker, Calder & Co., he is responsible.  C. S. Symonds, Cashier Utica City National Bank."

The bond was mailed to Noyes & Noyes, November 23, 1883, and thereafter the following telegrams passed between the parties:

"Nov. 27th, 1883, Grand Forks, Dakota.

"To Tucker, Calder & Co.: Bond received. Cannot use. Wire through your bank First National Bank of Grand Forks for bondsmen.

"Noyes & Noyes."

"Nov. 28, 1883.

"To First National Bank of Grand Forks, Dakota: Please provide bondsmen, Tucker v. Johnson. See Noyes.  C. S. Symonds, &c."

"Dec. 1, 1883, Grand Forks, Dakota.

"To Tucker, Calder & Co.: Bank received telegram. Insufficient. Bank must wire guaranty of two thousand dollars to First Nat. Bank here to remain harmless.  Noyes & Noyes."

"Utica, N. Y., Dec. 3d, 1883.

"To First National Bank of Grand Forks: We guaranty you against loss on bond of two thousand dollars, Tucker v. Johnson.

"C. S. Symonds, Cashier."

"Dec. 7, 1883, Grand Forks, Dakota.

"To Tucker, Calder & Co.: We need thirteen hundred dollars more bonds.

"Noyes & Noyes."

"Utica, N. Y., Dec. 8, 1883.

"To First National Bank of Grand Forks: We guaranty thirteen hundred additional, Tucker vs. Johnson. C. S. Symonds, Cashier."

With the exception of three letters to Noyes & Noyes, in confirmation of the foregoing dispatches, this ends the correspondence. Nothing further seems to have passed between the parties orally or in writing until long after their legal status had become fixed. On the 7th and 10th of December, 1883, Tucker, Calder & Co., by Noyes & Noyes, their attorneys, began suits and levied attachments upon the goods of said Johnson & Co., the plaintiff signing the attachment bonds. Prior to these suits other creditors had commenced suits and levied attachments. On the 12th of November, 1883, Johnson & Co. executed to Seymour S. Titus, cashier of the Citizens' National Bank at Grand Forks, a chattel mortgage covering all their stock, as security for certain notes and drafts discounted and held by said bank. At the time of the commencement of the said attachment suits said Titus was in the possession of the said stock of goods under this mortgage. Before the sheriff would consent to attach and sell the property under the warrant of attachment he demanded bonds of indemnity. Such bonds were given on the 7th and 10th of December, 1883. They were in the sum of eight hundred and seven hundred dollars respectively, and conditioned as follows: "If said sheriff shall hold said goods for Tucker, Calder and Company, by virtue of said attachment, and in case the court shall finally decide that said attachment should not have been made and the sheriff aforesaid shall be obliged to pay said claims or the value of said goods for unlawfully holding the same, if the court shall finally decide that said holding by said sheriff was unlawful, and if said Tucker, Calder & Co. shall pay all costs he shall sustain in said matters, not exceeding the sum of eight hundred dollars, then this obligation shall cease and be void, otherwise to remain in full force and effect." They were signed, "Moritz Heim for Tucker, Calder & Co., John McKelvey and C. E. Burrell." The plaintiff, John McKelvey, signed the bonds upon the request of Noyes & Noyes, the attorneys for Tucker, Calder & Co., and upon the strength of the telegrams above quoted, as a matter of business accommodation, without any knowledge as to the controversy or the merits of the claim of Titus, the mortgagee, to the stock of goods. Upon the receipt of said indemnity bonds the sheriff proceeded to dispossess the said mortgagee and took possession of the stock of Johnson & Co. under the writs of attachment as aforesaid. In February, 1884, judgments were entered in the several attachment suits against J. K. Johnson & Co., including the two actions brought by Tucker, Calder & Co., executions were issued and the goods were sold by the sheriff. None of the money realized on this sale reached Tucker, Calder & Co., as it was all applied in payment of prior judgments. After the execution sale Titus brought an action against the sheriff for conversion and recovered judgment for about the sum of $15,000, but collected nothing, as the sheriff was insolvent. Thereafter Titus sued McKelvey and the other sureties on the various indemnity bonds as wrongdoers for having, by reason of said indemnity bonds, induced the sheriff to seize and hold said property, and, after trial, recovered a judgment against the said McKelvey for $15,017.81. Execution was issued on said judgment and a large part of McKelvey's real estate was sold thereunder. In February, 1892, McKelvey redeemed said property, paying to the sheriff the sum of $3,733.10. For this sum and $1,000 additional for expenses, etc., the plaintiff demands judgment. There is no evidence, other than a slight presumption, that Tucker, Calder & Co. knew that indemnity

bonds were given to the sheriff. They did not expressly authorize or ratify the giving of such bonds. The theory of the action is that the defendants having induced the plaintiff to sign the bonds for their advantage and benefit, and having agreed to guaranty bonds signed by him, are under an implied obligation to reimburse him for the loss sustained. The defense is that the defendants only requested the plaintiff to sign attachment bonds, that in asking the plaintiff to sign indemnity bonds their attorneys exceeded their authority, and the defendants are not liable for the loss occasioned thereby.

Edwin H. Risley and Guy C. H. Corliss, for plaintiff.

Frederick G. Fincke, for defendants.

COXE, District Judge, (after stating the facts as above.) Although a great mass of evidence is presented, the facts, upon which liability rests, are few and simple. Tucker, Calder & Co. employed Noyes & Noyes to collect a claim of $1,400 against J. K. Johnson & Co., of Grand Forks, Dak. Noyes & Noyes proposed to levy an attachment if Tucker, Calder & Co. would induce the First National Bank of Grand Forks to furnish the necessary bonds. Thereupon Tucker & Co., through their bank at Utica, N. Y., requested the First National Bank at Grand Forks, to furnish bondsmen in the suit of Tucker v. Johnson. For particulars the bank at Grand Forks was referred to Noyes & Noyes. The Utica bank agreed to guaranty the bondsmen from loss to the extent of $3,300. Upon the receipt of this request and guaranty the plaintiff, who was president of the Grand Forks bank, signed the bonds presented by Noyes & Noyes, and because of this act he suffered the loss which he now asks the defendants to make good.

In contemplation of law it is as if the defendants had requested the plaintiff to sign bonds in Tucker v. Johnson which Noyes & Noyes would prepare and had agreed to pay all loss— to the extent, at least, of $3,300—which he should sustain by reason of such signing. It would seem that the action should be based upon the defendants' promise direct to the plaintiff, and not upon the theory that Noyes & Noyes, as attorneys, had authority to bind their clients by requesting McKelvey to sign the bonds. In this view it is quite immaterial whether the attorneys acted within the scope of their authority or not. Assume that they had no authority to give indemnity bonds to the sheriff, that the defendants never intended to give such bonds, and that the acts of Noyes & Noyes in this regard were entirely unauthorized by them. The defendants are still liable on their promise. The difficulty with their contention is that it assumes that the plaintiff knew what was passing in the minds of the defendants. So far as the record discloses the first intimation that the plaintiff had of the matter was when he received the dispatch of November 28, 1883, requesting him to provide bondsmen in Tucker v. Johnson. He did not know whether Tucker v. Johnson was an attachment suit, a foreclosure suit, or a patent suit. He did not know whether the bond required was one on attachment or appeal, as indemnity or as security for costs. He knew simply this: That there was a suit pending between Tucker and Johnson; that a bond of some

kind was needed, and that Noyes & Noyes, the plaintiff's attorneys, would inform him as to the particulars. If the telegram had said, "Please provide bondsmen for attachment in Tucker v. Johnson," the principle contended for by defendants might apply. But the request was not limited in any way, except that the bondsmen were to be in the suit of Tucker v. Johnson. In all other respects it was a broad request to sign whatever bonds Noyes & Noyes presented. The plaintiff was fully justified in assuming, after this general reference to Noyes & Noyes, that they knew their clients' wishes, and were acting in conformity to their clients' instructions. Having been directed by the defendants to Noyes & Noyes he could do nothing else than sign the bonds which they assured him were required in the suit of Tucker v. Johnson.

It seems to the court that the defendants do not meet the issue by the assertion that they are not liable upon this unqualified promise, because the bonds which the plaintiff signed for their benefit were not the bonds which they expected him to sign, and not the bonds which they thought he had signed. They could have limited their liability to a specific bond. This they did not do. It was conceded on the argument that the judgment against McKelvey in the suit brought against him by Titus cannot be attacked in this action. In other words, it is not disputed that McKelvey's property to the extent of nearly $4,000 has been taken from him by due process of law for the sole and only reason that he became bondsman for the defendants. It was purely a matter of accommodation on the part of the plaintiff. He acted without a particle of interest in the matter and in entire good faith. He received the defendants' request to sign the bonds, and on their promise to hold him harmless, he signed, and he lost. The question is whether he or the defendants shall suffer this loss. To this question it seems to the court that but one answer is possible. The defendants must reimburse the plaintiff for the injury which he has sustained solely on their account. They induced him to sign the bonds, and promised to pay the loss if he did sign. That promise is now invoked and must be enforced.

There must be a judgment for the plaintiff.